**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-21770-BLOOM/Elfenbein

PROGRESSIVE SELECT
INSURANCE COMPANY

    Plaintiff,

v.

STEPHANIE JENKINS,
MARTHA SALDARRIAGA,
FABIAN ZEPEDA, ALAIN
LOUISSANT, ALEXIS BUCAT,
and LINDSEY LAQUERRE

    Defendants.
_____/

**ORDER ON COMBINED MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR DEFAULT FINAL JUDGMENT**

**THIS CAUSE** is before the Court upon Progressive's Combined Motion for Judgment on the Pleadings and Motion for Default Final Judgment ("Motion"), ECF No. [47], filed on September 25, 2025. A clerk's default was entered against Defendants Stephanie Jenkins, as Personal Representative of the estate of Bobby Jenkins, Jr., Martha L. Saldarriaga, Carlos H. Fabian Zepeda, Alexis Bucat, and Lindsey Laquerre ("Defaulting Defendants") because they have failed to appear, plead or otherwise defend this action. *See* ECF Nos. [15]; [32]; [35]; [43]. Defendant Alain Louissant has appeared in the action but has not defended against the allegations contained in the Complaint. ECF No. [10]. No Defendant has filed a response to the Motion or sought additional time by which to do so. The Court has considered the Motion, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

Case No. 25-cv-21770-BLOOM/Elfenbein

## I. BACKGROUND

On April 17, 2025, Progressive filed an action for declaratory judgment, seeking, in Counts I and II, declarations that (1) "there is no coverage afforded by the Policy for any claims arising from the May 19, 2024 [incident];" (2) "the Policy does not provide coverage to Defendants, Zepeda or Saldarriaga, for the claims that are or could be presented by Defendants, [Ms. Jenkins], Louissant, Bucat, or Laquerre;" (3) "Progressive has no obligation to provide a defense for Defendants, Zepeda or Saldarriaga in connection with any claims presented by Defendants, [Ms. Jenkins], Louissant, Bucat, or Laquerre in connection with the May 19, 2024 incident;" and (4) "Progressive has no obligation to provide any indemnification for or on behalf of Defendants, Zepeda or Saldarriaga, in connection with any claims presented by Defendants [Ms. Jenkins], Louissant, Bucat or Laquerre, in connection with the May 19, 2024 incident[.]" ECF No. [1] ¶¶ 81, 92. Progressive also requests that, under Fla. Stat. § 627.409, the Court rescind the policy issued to Saldarriaga, with Saldarriaga and Zepeda as insureds (Count III). *Id.* ¶¶ 93-95.

The following facts are taken from the Complaint and attached exhibits. *See Goldman v. HSBC Bank USA, Nat. Ass'n*, No. 13-cv-81271, 2015 WL 1782241, at *1 (S.D. Fla. Mar. 24, 2015) ("By its default, a defendant 'admits the plaintiff's well-pleaded allegations of fact.'" (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975))). Progressive is an insurance company authorized to conduct business in the State of Florida. ECF No. [1] ¶ 12. On April 16, 2018, Progressive issued Policy No. 921057132 ("Policy"), a Florida Auto Policy, to Saldarriaga (as the named insured). *Id.* ¶ 13. The Policy insured a 2020 Volkswagen Jetta, VIN No.: 3VWCB7BU8LMO53897 (the "Jetta"). ECF Nos. [1] ¶ 16; [1-1]. Following its issuance, the Policy was subsequently renewed for November 29, 2023 through May, 29, 2024, and Zepeda was added as an insured. *Id.* ¶ 14; ECF No. [1-1].

The Policy states, in pertinent part:

2

Case No. 25-cv-21770-BLOOM/Elfenbein

## FLORIDA AUTO POLICY

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to inure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**, and all endorsements on this policy.

ECF Nos. [1] ¶ 17; [1-1] at 16. The Policy's relevant insuring language is contained in Form 9611D FL (07/17), which states, in pertinent part:

### PART I – LIABILITY TO OTHERS

### INSURING AGREEMENT – BODILY INJURY

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** for which an **insured person** becomes legally responsible because of an accident.

ECF Nos. [1] ¶ 18; [1-1] at 18. The Policy further provides:

### PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide us with all accident/loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1. cooperate with us in any matter concerning a claim or lawsuit; …

3. allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you or any other person claiming

3

> coverage, and answer all reasonable questions we may ask and provide any documents, records, or other tangible items that we request, when, where, and as often as we may reasonably require;

ECF Nos. [1] ¶ 19; [1-1] at 51.

The Policy further provides:

> **GENERAL PROVISIONS**
>
> **FRAUD OR MISREPRESENTATION**
>
> This policy was issued in reliance upon the accuracy and truthfulness of information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:
>
> 1.   made incorrect or untrue statements or representations to us with regard to any material fact or circumstance;
>
> 2.   concealed or misrepresented any material fact or circumstance; or
>
> 3.   engaged in fraudulent conduct;
>
> at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

ECF Nos. [1] ¶ 20; [1-1] at 53.

### A.   Policy Cancellation

On October 22, 2023, prior to the Policy's renewal for the November 2023 through May 2024 period, Saldarriaga and Zepeda received an "Auto Renewal Reminder." ECF Nos. [1] ¶ 21; [1-2]. As reflected in the October 22, 2023 "Auto Renewal Reminder," Saldarriaga and Zepeda were provided with the option of paying the required insurance premium, in full, or making monthly payments between November 2023 and April 2024. ECF Nos. [1] ¶ 22; [1-2]. Neither Saldarriaga nor Zepeda made the required payment prior to the Auto Renewal Reminder deadline of November 6, 2023 and the Policy's 'policy period,' was subsequently changed to November 29, 2024, through May 29, 2024. ECF Nos. [1] ¶ 23; [1-3]. In addition, and as a result of the non-

payment and failure to subsequently provide requested documentation, the premiums for the policy period of November 29, 2024 through May 29, 2024 increased. ECF Nos. [1] ¶ 24; [1-4]. The notice of premium increase was transmitted to Zepeda and Saldarriaga on January 14, 2024. ECF Nos. [1] ¶ 25; [1-4]. Neither Zepeda nor Saldarriaga paid the outstanding premium due and claimed in the January Auto Insurance Bill. ECF No. [1] ¶ 26.

When that bill remained outstanding, Progressive sent another Auto Insurance Bill seeking the owed, but unpaid premium. ECF Nos. [1] ¶ 27; [1-5]. Neither Zepeda nor Saldarriaga paid the outstanding premium due and claimed in the February Auto Insurance Bill. ECF No. [1] ¶ 28. When that remained outstanding, Progressive sent another Auto Insurance Bill seeking the owed but unpaid premium. ECF Nos. [1] ¶ 29; [1-6]. Neither Zepeda nor Saldarriaga paid the outstanding premium due and claimed in the March Auto Insurance Bill. ECF No. [1] ¶ 30.

As a result of these failures, on April 15, 2024, Progressive sent a "Cancellation Notice," to Zepeda and Saldarriaga, advising that the Policy would be canceled, effective May 1, 2024, due to the non-payment of the premium. ECF Nos. [1] ¶ 31; [1-7]. On April 26, 2024, Progressive sent Zepeda and Saldarriaga subsequent correspondence advising that the Policy would be canceled on May 1, 2024, unless payment of the unpaid portion of the premium was received. ECF Nos. [1] ¶ 32; [1-8]. On April 29, 2024, Progressive sent Zepeda and Saldarriaga subsequent correspondence advising that the Policy would be canceled on May 1, 2024, unless payment of the unpaid portion of the premium was received. ECF Nos. [1] ¶ 33; [1-9].

On May 2, 2024, after no payment had been received, Progressive canceled the Policy and advised Zepeda and Saldarriaga that they "no longer have insurance with [Progressive], effective May 1, 2024." ECF Nos. [1] ¶ 34; [1-10].

**B. The May 19, 2024 Incident**

On May 19, 2024, at approximately 3 a.m., Zepeda was operating the Jetta travelling northbound on North Miami Avenue, approaching the intersection with 109th Street in Miami Shores, Miami-Dade County, Florida. ECF No. [1] ¶ 35. Louissant was operating his vehicle heading southbound on North Miami Avenue, approaching the intersection with 109th Street in Miami Shores, Miami-Dade County, Florida. *Id.* ¶ 36. Bucat was a passenger in the vehicle operated by Louissant. *Id.* ¶ 37.

At the same time, the Decedent, Bobby Jenkins, Jr. ("Mr. Jenkins"), was operating a motorcycle heading southbound on North Miami Avenue, approaching the intersection with 109th Street. *Id.* ¶ 38. Laquerre was a passenger on the motorcycle operated by Mr. Jenkins. *Id.* ¶ 39.

At approximately 3 a.m., Zepeda drove into the opposite lane of travel, causing Louissant to attempt to evade by heading west into the swale. *Id.* ¶ 40. Despite the attemptted evasion, the Jetta operated by Zepeda struck the vehicle operated by Louissant. *Id.* ¶ 41. Following the impact, the Jetta continued forward, striking the motorcycle operated by Mr. Jenkins. *Id.* ¶ 42.

As a result of these events, Mr. Jenkins was pronounced dead at the scene. *Id.* ¶ 43. Laquerre was transported to Ryder Trauma Center for the treatment of significant injuries, and it was believed that both Louissant and Bucat were injured. *Id.* ¶¶ 44-46.

**C. Saldarriaga's Post-Incident Actions and Statement of No Loss**

After the accident, on May 19, 2024, Saldarriaga contacted Progressive and sought to reinstate the Policy that had been canceled, effective May 1, 2024. *Id.* ¶ 47. During that communication, Progressive advised Saldarriaga that the Policy could be reinstated upon payment of the outstanding amount, provided that the insureds could represent: (i) that no household member had been involved in any accidents between May 1, 2024 and the time of execution; (ii)

that no one operating a listed vehicle had been involved in an accident between May 1, 2024 and the time of execution; (iii) that there had been no damage or theft of any of the listed vehicles between May 1, 2024 and the time of execution; and (iv) that they acknowledged that there would be no coverage for any accidents, damages or claims arising or occurring between May 1, 2024 and the time of execution. *Id.* ¶ 48.

Following this communication, Saldarriaga executed a "Statement of No Loss." *Id.* ¶ 49. The Statement of No Loss provides:

## Statement of no loss

To be eligible to reinstate your policy you must verify the following conditions (note: other conditions may apply):

I, **Martha L Saldarriaga**, verified no household member has been involved in any motor vehicle accidents for the time period between 12:01 AM on May 1, 2024 and the date and time I signed this document.

I, **Martha L Saldarriaga**, verified no one operating a vehicle listed on my policy has been involved in an accident for the time period between 12:01 AM on May 1, 2024 and the date and time I signed this document.

I, **Martha L Saldarriaga**, verified there has been no damage to or theft of any of the vehicles listed on my policy during the time period between 12:01 AM on May 1, 2024 and the date and time I signed this document.

I, **Martha L Saldarriaga**, acknowledge that, if my policy is reinstated, Progressive will not cover any accidents or damages between May 1, 2024 and the date and time I signed this document.

| Signature of named insured | Date | Time |
|---|---|---|
| X  Martha L. Saldarriaga  (DocuSigned by: 025A8EDE5A124CF...) | May 19, 2024 | 11:04 AM |

**Note**: Date and time must be noted when document is signed.
**Note**: Signing this document does not guarantee reinstatement.
**Note**: Reinstatement must be processed within the reinstatement eligibility time frame to be valid.
**Note**: Pay all future premiums or your policy may not be eligible to be reinstated in the future.

Form SONL (09/22)

*Id.* ¶ 50; ECF No. [1-11].

As reflected on the Statement of No Loss, it was executed at 11:04 a.m., after the May 19, 2024 incident. ECF Nos. [1] ¶ 51; [1-11]. In the Statement of No Loss, Saldarriaga represented that she had verified that: (i) no household member had been involved in an accident, despite the fact that Zepeda had been involved in the incident hours earlier; (ii) no one operating a vehicle listed on the policy had been involved in any accidents, despite the fact that Zepeda had been

7

involved in an accident involving the Jetta hours earlier; and (iii) there had been no damage to the vehicles listed on the Policy. ECF Nos. [1] ¶¶ 52-54; [1-11].

As reflected in the Statement of No Loss, Saldarriaga expressly acknowledged that Progressive would not cover any accidents or damages occurring between May 1, 2024 and her execution of the Statement of No Loss dated May 19, 2024. ECF Nos. [1] ¶ 55; [1-11]. However, based upon Progressive's receipt of the previously outstanding payment and the Statement of No Loss, Progressive reinstated the Policy with no lapse in coverage. ECF No. [1] ¶ 56. Progressive would not have reinstated the Policy without the Statement of No Loss or if the existence of the May 19, 2024 incident had been disclosed. *Id.* ¶ 57.

## II. LEGAL STANDARD

Progressive is seeking entry of judgment against all Defendants. Defaults have been entered against five of the six Defendants. ECF Nos. [15]; [32]; [35]; [43]. As a result, it is seeking default final judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. To avoid any potential inconsistencies as a default declaratory judgment is being sought, but Louissant has answered, Progressive is seeking judgment on the pleadings as to Louissant. ECF No. [47] at 9-10.

### A. Default Final Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court is authorized to enter a final judgment of default against a party who has failed to respond to a complaint. Fed. R. Civ. P. 55(b)(2). "The entry of default constitutes an admission by a defendant of the well-pleaded allegations in the complaint." *Chanel, Inc. v. 21948352*, 769 F. Supp. 3d 1299, 1305 (S.D. Fla. 2025).

### B. Judgment on the Pleadings

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A party may move for judgment on the pleadings if there are no material facts in dispute. *See Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts. *Cunningham v. Dist. Atty's Off. for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). As such, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### C. Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "may declare the rights and other legal relations of any interested party[.]" 28 U.S.C. § 2201(a). "In all cases arising under the Declaratory Judgment Act, . . . the threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir.

1995) (citations omitted). "Whether such a controversy exists is determined on a case-by-case basis." *Id.* (quoting *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991)). In order to make this determination, the Court "look[s] to the state of affairs as of the filing of the complaint[.]" *Id.* (quoting *Int'l Harvester v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980)). The party invoking the federal court's authority must demonstrate "at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (citing *Caulkins*, 931 F.2d at 747).

### III. DISCUSSION

Regarding Counts I and II, in which Progressive seeks a declaration of no duty to defend or indemnify, Progressive has not demonstrated that its claims are ripe for adjudication. Progressive states that it "is in doubt with respect to its rights, duties and obligations under the Policy and, by this Complaint, seeks a declaration of its rights and obligations under that Policy[,]" but has not indicated that anyone has filed a lawsuit naming either of the Policy's insureds, Saldarriaga and Zepeda, as defendants. ECF No. [1] ¶ 81. Although Progressive notes that, following the May 19, 2024 incident, Ms. Jenkins "was appointed and letters of administration issued for purposes of prosecuting a wrongful death action[,]" Progressive does not state whether such an action has proceeded or whether any defendants have been named. *Id.* ¶¶ 62-63. Nor has Progressive alleged that Saldarriaga or Zepeda sought a defense from Progressive. *See Allstate Prop. & Cas. Ins. Co. v. Peluchette*, No. 15-cv-80325, 2015 WL 11438215, at *3 (S.D. Fla. July 30, 2015) ("Plaintiff has not clearly identified a case—and the court has been unable to locate one—in which a duty-to-defend controversy was found to exist where the insured never sought a

10

defense from its insurance company, the insurance company denies that it is obligated to provide a defense, and the insured lets the matter rest."); *see also Atl. Cas. Ins. Co. v. GMC Concrete Co.*, No. 07-0563-WS-B, 2007 WL 4335499, at *5 (S.D. Ala. Dec. 7, 2007) ("[C]ourts have recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated.") (quoting *State Farm Fire and Cas. Co. v. Myrick,* No. 06-cv-359, 2007 WL 3120262, *2 (M.D. Ala. Oct. 23, 2007)). Therefore, it is unclear what "actual or threatened injury" Progressive believes "is likely to be redressed" by a declaration that it has no duty to defend or indemnify. *Atlanta Gas*, 68 F.3d at 414.

In *Progressive Express Ins. Co. v. Star Painting & Waterproofing, Inc.*, the only case Progressive cites in which the court granted a declaration of no duty to defend or indemnify, there was an underlying lawsuit in which the insured sought coverage from the insurer. No. 19-cv-62282, 2021 WL 3855657, at *7 (S.D. Fla. Aug. 27, 2021) (stating plaintiff had no duty to defend or indemnify "in the underlying litigation"). "The general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the *complaint against the insured*, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *Cincinnati Specialty Underwriters Ins. Co. v. KNS Grp., LLC*, 561 F. Supp. 3d 1298, 1306 (S.D. Fla. 2021) (quoting *Amerisure Ins. Co. v. Gold Coast Marine Distributors, Inc.*, 771 So. 2d 579, 580 (Fla. 4th DCA 2000)) (emphasis added), *aff'd*, No. 21-13628, 2022 WL 5238711 (11th Cir. Oct. 6, 2022).

With regard to Progressive's duty to indemnify, "Florida law provides that an insurer's duty to defend is separate and distinct from its duty to indemnify." *AIX Specialty Ins. Co. v. Everett*, 543 F. Supp. 3d 1321, 1326 (M.D. Fla. 2021) (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)) *aff'd,* No. 21-

11

12386, 2022 WL 950936 (11th Cir. Mar. 30, 2022). In an unpublished opinion, the Eleventh Circuit stated it agreed with the "many district courts in this circuit [that] have ruled that an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). Additionally, because "the duty to indemnify cannot exist without the duty to defend" and Progressive's claim for a declaratory judgment on its duty to defend is premature, its claim for a declaratory judgment on its duty to indemnify is also premature. *AIX Specialty,* 543 F. Supp. 3d. at 1326-27. Therefore, Progressive's Motion is denied with respect to Counts I and II.

Progressive also seeks to rescind the Policy pursuant to Fla. Stat. § 627.409, which allows for the "rescission of an insurance policy on the basis of a misstatement or omission in the insurance application." *Miguel v. Metro. Life Ins. Co.*, 200 F. App'x 961, 965 (11th Cir. 2006). Section 627.409 states, in part:

> (1) Any statement . . . made by or on behalf of an insured . . . in an application for an insurance policy . . . or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Fla. Stat. § 627.409(1).

On April 15, 2024, Progressive notified Zepeda and Saldarriaga that the Policy "would be canceled, effective May 1, 2024, due to the non-payment of the premium." ECF No. [1] ¶ 31. Progressive did not receive any further payment and on May 2, 2024, Progressive canceled the

Policy and advised Zepeda and Saldarriaga that they "no longer have insurance with [Progressive], effective May 1, 2024." *Id.* ¶ 34 (quoting ECF No. [1-10] at 2). Following the accident that took place on May 19, 2024, Saldarriaga "contacted Progressive and sought to reinstate the Policy that had been canceled effective May 1, 2024." *Id.* ¶ 47. Progressive advised Saldarriaga that the Policy could be reinstated, upon payment of the outstanding balance, provided that Saldarriaga and Zepeda could represent:

> (i) that no household member had been involved in any accidents between May 1, 2024 and the time of execution; (ii) that no one operating a listed vehicle had been involved in an accident between May 1, 2024 and the time of execution; (iii) that there had been no damage or theft of any of the listed vehicles between May 1, 2024 and the time of execution; and (iv) that they acknowledged that there would be no coverage for any accidents, damages or claims arising or occurring between May 1, 2024 and the time of execution.

*Id.* ¶ 48.

Saldarriaga executed a "Statement of No Loss" following the May 19, 2024 incident, in which she represented that "'no household member' had been involved in an accident, despite the fact that [Zepeda] had been involved in incident hours earlier." *Id.* ¶ 52. Saldarriaga also represented that "no one operating a vehicle listed on the policy had been involved in any accidents, despite the fact that . . . Zepeda[] had been involved in an accident involving the Jetta hours earlier." *Id.* ¶ 53. She also represented that "there had been no damage to the vehicles listed on the Policy" and "expressly acknowledged that Progressive would not cover any accidents or damages occurring between May 1, 2024, and her execution of the Statement of No Loss dated May 19, 2024." *Id.* ¶¶ 54-55. Although, based upon the receipt of the previously outstanding payment and the Statement of No Loss, Progressive reinstated the Policy with no lapse in coverage, "Progressive would not have reinstated the Policy without the Statement of No Loss or if the existence of the May 19, 2024 incident . . . [had] been disclosed." *Id.* ¶¶ 56-57. Therefore, by

signing the Statement of No Loss, Saldarriaga made a "misrepresentation in the application of insurance[,]" thereby giving Progressive "the unilateral right to rescind its insurance policy[.]" *Am. Gen. Life Ins. Co. v. Useche*, No. 21-cv-21517, 2021 WL 2184874, at *3 (S.D. Fla. May 28, 2021) (quoting *Moustafa v. Omega Ins. Co.*, 201 So. 3d 710, 714 (Fla. 4th DCA 2016)).

By their default, Defaulting Defendants have accepted as true the well-pleaded facts alleged in the Complaint. *In re Lorenzo*, 606 F. App'x 548, 553 (11th Cir. 2015). However, because Progressive has only stated that it insured Zepeda and Saldarriaga, Progressive has no basis to bring a claim for rescission of an insurance policy against the other Defaulting Defendants or Louissant. Because "the facts in the complaint, accepted as true, form[] a sufficient basis for the entry of judgment" as to Count III, default final judgment is entered against Zepeda and Saldarriaga. *Id.*

**IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Progressive's Combined Motion for Judgment on the Pleadings and Motion for Default Final Judgment, **ECF No. [47],** is **GRANTED IN PART** and **DENIED IN PART**;

2. Progressive's Combined Motion for Judgment on the Pleadings and Motion for Default Judgment is **DENIED** as to Counts I and II and **GRANTED IN PART** as to Count III. Policy No. 921057132, issued to Martha L. Saldarriaga, with Saldarriaga and Carlos H. Fabian Zepeda as insureds, is void *ab initio* and rescinded pursuant to Fla. Stat. § 627.409(1)(a) and 627.409(1)(b).

Case No. 25-cv-21770-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 25, 2025.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

cc:     Counsel of Record

Stephanie Jenkins
Shaw Lewenz LLLP
110 S.E. 6th Street Ste 2900
Ft. Lauderdale, FL 33301
PRO SE

Carlos H. Fabian Zepeda
240139167
Metro West Detention Center
13850 NW 41st Street
Miami, FL 33178
PRO SE

Alain Louissant
150 NW 120th Terrace
Miami, FL 33168
PRO SE

Alexis Bucat
7329 Byron Ave
Miami, FL 33142
PRO SE

Lindsey Laquerre
Shaw Lewenz LLLP
110 S.E. 6th Street Ste 2900
Ft. Lauderdale, FL 33301
PRO SE